**David KIELBOWICK, Jr., Appellant,**

v.

**AMBRIDGE AREA SCHOOL BOARD.**

Commonwealth Court of Pennsylvania.

Argued Nov. 14, 1995.
Decided Dec. 21, 1995.

Andrew M. Hladio, for appellant.

Wayne S. Lipecky, for appellee.

Before COLINS, President Judge, and NEWMAN, J., and RODGERS, Senior Judge.

COLINS, President Judge.

David Kielbowick (Kielbowick) appeals an order of the Court of Common Pleas of Beaver County (trial court), which affirmed the decision of the Ambridge Area School Board (Board) that during the 1989–90 school term, Kielbowick was a full-time substitute teacher and not a temporary professional employee. Based on this determination of Kielbowick's status, the Board concluded that under the collective bargaining agreement (Agreement) then existing between the Ambridge Area School District (District) and the Ambridge Area Education Association (Association), no permanent teaching position could be offered to Kielbowick, pursuant to Section 701 and

Section 703 of the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301.[1]

Kielbowick was a substitute teacher at the Ambridge Area High School during the 1988–89 school term and was on the approved substitute list for the 1989–90 school year. In October 1989, upon the resignation of a permanent earth science teacher, Kielbowick, who was certified to teach earth science, was hired to fill the vacancy created. Although Kielbowick received favorable evaluations during the school term, at the end of the year, another teacher was hired to teach earth science.

In response to Kielbowick's queries about being overlooked for the permanent teaching position, the District maintained that the Agreement it had with the Association at the time Kielbowick was hired permitted teachers to bid, at a specially scheduled faculty meeting, on any teaching vacancies for which they were certified. In this regard, the District contended that the foregoing provision precluded the Board from automatically offering Kielbowick a permanent position. However, Kielbowick was not advised of any reason why he was not hired and was not afforded a hearing on this issue. As a result, he filed a complaint in mandamus.

Although the complaint was dismissed, the Board was directed to hold a hearing to determine Kielbowick's professional status, and it ultimately deemed him to be a full-time substitute teacher. Kielbowick appealed this decision to the Secretary of Education (Secretary), who dismissed the appeal on jurisdictional grounds. Kielbowick subsequently appealed to this Court, which held that the Secretary should not have dismissed the appeal and which directed that the matter be transferred to common pleas court.

After a hearing, the trial court rendered a decision dated August 11, 1994, concluding that Kielbowick had been hired as a full-time substitute, based on the minutes of the October 19, 1989 Board meeting and as specified in a letter from the Board to Kielbowick dated October 20, 1989. As a result, the trial court found that Kielbowick had never been misled about his status and affirmed the Board's action, which decision gave rise to the present appeal.

■ At issue is whether the trial court erred in affirming the Board's determination that Kielbowick was a substitute teacher rather than a temporary professional employee, as differentiated in the Public School Code of 1949 (School Code),[2] considering that: (1) Kielbowick was replacing a permanent earth science teacher who resigned; and (2) while serving as replacement of the permanent earth science teacher, Kielbowick received favorable evaluations from the District at the end of the 1989–1990 school year.

■ On appeal this Court must affirm the trial court unless it finds a violation of constitutional rights, an error of law, manifest abuse of discretion, or that any necessary findings of fact are not supported by substantial evidence. *Waslo v. North Allegheny School District,* 121 Pa.Cmwlth. 34, 549 A.2d 1359 (1988), *petition for allowance of appeal denied,* 522 Pa. 592, 561 A.2d 744 (1989).

In reviewing the record, we remain aware of the legislatively defined distinctions between temporary professional employees and

1. Section 701 of PERA, 43 P.S. § 1101.701 provides as follows:

   Collective bargaining is the performance of the mutual obligation of the public employer and the representative of the public employes to meet at reasonable times and confer in good faith with respect to wages, hours and other terms and conditions of employment, or the negotiation of an agreement or any question arising thereunder and the execution of a written contract incorporating any agreement reached but such obligation does not compel either party to agree to a proposal or require the making of a concession.

Section 703 of PERA, 43 P.S. § 1101.703 provides as follows:

   The parties to the collective bargaining process shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of the Commonwealth of Pennsylvania or the provisions of municipal home rule charters.

2. Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101 to 27–2702.

substitute teachers[3] who fill vacancies created by a professional employee.[4] In *Love v. Redstone Township*, 375 Pa. 200, 204, 100 A.2d 55, 57 (1953), our Supreme Court found that the Legislature intended (1) a professional employee's permanent absence to be filled by a temporary professional employee who, if subsequently found qualified, would attain permanent status; (2) a non-permanent vacancy in the sense that the teacher might return, to be filled by a substitute. Further, Section 1108(b) of the Code, 24 P.S. § 11–1108(b), provides that a

> temporary professional employe whose work has been certified by the district superintendent to the secretary of the school district, during the last four (4) months of the second year of such service, as being satisfactory shall thereafter be a 'professional employe' within the meaning of this article. The attainment of this status shall be recorded in the records of the board and written notification thereof shall be sent also to the employe. The employe shall then be tendered forthwith a regular contract of employment as provided for professional employes.

Similarly, in *Pottsville Area School District v. Marteslo*, 423 A.2d 1336, 1338 (Pa. Cmwlth.1980), this Court reaffirmed that "the position of substitute is clearly temporary in nature and the duration of the position is measured by the length of the absence of the regular professional employee.... A permanent vacancy may not be filled indefinitely by a substitute." By way of caveat, however, the Court in *Pottsville* observed the following:

> This rule will not be slavishly adhered to, however, where to do so would lead to an absurd result and seriously impair the efficient and intelligent administration of our

schools. Nor do we perceive the rule as requiring school districts to *immediately* fill a permanent vacancy with a temporary professional employee.

*Id.* 423 A.2d at 1338.

Kielbowick attempts to differentiate the result in *Pottsville* from his own case by emphasizing that in *Pottsville*, the school district followed Pennsylvania Department of Education certification operating and policy guidelines and had obtained prior consent from the Department of Education (Department) prior to classifying a particular teacher as a substitute. In comparison, Kielbowick avers that in his situation, the District neither followed Department guidelines nor obtained the Department's prior consent before categorizing him as a substitute.

Kielbowick further avers that, pursuant to Section 1108(b) of the Code, there is a statutory mandate that he be accorded "professional employee" status, especially considering his satisfactory performance ratings. Additionally, he argues that there is no authority establishing that a negotiated contract between a school district and its teachers has priority over legislative enactments and judicial adjudications. Specifically, Kielbowick avers that the bid clause of the Agreement violates the School Code, which provides that teachers who resign are to be replaced by temporary professional employees and not by substitutes. In this regard, he points to Section 703 of PERA as providing that parties to the collective bargaining process shall not implement a contract provision if the latter is in violation of, or in conflict with, any statutes enacted by the General Assembly. Finally, Kielbowick contends that he should have been given the rights and protections of a temporary professional employee, which

---

**3.** The term "temporary professional employee" means an individual who has been employed to perform, for a limited time, the duties of a newly created position or of a regular professional employee whose services have been terminated by death, resignation, suspension or removal. The term "substitute" means any individual who has been employed to perform the duties of a regular professional employee during such period of time as the regular professional employee is absent on sabbatical leave or for other legal cause authorized and approved by the board of school directors or to perform the duties of a temporary

professional employee who is absent. 24 P.S. § 11–1101.

**4.** Section 1101(1) of the School Code, 24 P.S. § 11–1101(1) defines "professional employee," in pertinent part, as:

> those who are certificated as teachers, supervisors, supervising principals, principals, assistant principals ... visiting teachers ... the selection of whom is on the basis of merit as determined by eligibility lists....

under the School Code which include, above all, an opportunity to be heard at a dismissal hearing, and pursuant to Local Agency Law, 2 Pa.C.S. § 553, reasonable notice of said hearing.

Initially, we note that Kielbowick's approximately nine-month teaching period beginning in October 1989 and concluding in June 1990 did not provide him with the mandatory two-year satisfactorily-rated period of service required by Section 1108(c) of the Code, 24 P.S. § 11–1108(c), to become entitled to receive a regular employment contract or, if not, to be given a written explanation signed by the School Board indicating the reason for said refusal. Moreover, we find that substantial evidence of record supports the trial court's findings that Kielbowick was hired as a full-time substitute, not as a temporary professional employee, for the 1989–1990 school year, and that the Agreement then in effect between the School District and the Association precluded offering Kielbowick a permanent teaching position. First, the minutes from the October 19, 1989 School Board meeting unequivocally state that "[i]t is recommended that David Kielbowick, Jr., be employed as a full time substitute Earth/Science Teacher for the remainder of the 1989–90 School Year." The foregoing was documented by both the October 20, 1989 and May 18, 1990 letters sent to Kielbowick that referred to his status as a "full time substitute." Finally, the fact that Kielbowick was hired as a substitute, and the School District's custom of complying with School Board and Department guidelines in filling teaching vacancies, were reinforced by the following testimony elicited from Joseph C. Dimperio, Superintendent of Schools for the District, at the February 24, 1992 School Board hearing:

Q. In the Fall of 1989–90, did David Kielbowick, Jr. start the year out as a substitute?

A. To my knowledge, I believe that [sic] were the years that were read into the Record....

Q. Do your recall if Erv Weicheidel [former earth science teacher] resigned during the 1989–90 school year?

A. I don't recall the time, but he did resign.

Q. He did resign. Do you recall who replaced Erv Weicheidel?

A. We had David Kielbowick, Jr., replace him as a substitute....

Q. Are you familiar with the Department of Education Policy Guidelines? [5]

A. Some of them....

Q. Do you use them in your duties as Superintendent of the School Board?

A. We do.

....

Q. What else do you follow with regard to hirings, firings and anything of that sort? Do you follow the School Board?

A. We do.

Q. Are you familiar with evaluations that were done of David Kielbowick, Jr., during the 1989–90 school year?

A. Somewhat familiar, yes.

....

Q. And all those [evaluations] you are doing ... [are] ... for purposes of following the School Code and also the policy guidelines ... that the Department of Education has?

A. That's correct.

Considering that Kielbowick did not fill the earth science teaching position for the two-year period required for the statutory mandate of Section 1108(c) of the Code to become applicable and that the balance of the record, specifically the School Board's official correspondence to Kielbowick and the superintendent's testimony, indicates that he was hired

5. The Pennsylvania Department of Education (PDE) Certification Manual of January 1987 (a revision of the 1975 Professional Personnel Certification and Staffing Policies and Guidelines) is issued as a reference to guide schools in complying with laws, administrative regulations, and court decisions regarding certification and staffing practices.

as a full-time substitute, we must affirm the trial court's order.

RODGERS, Senior Judge concurs in the result only.

### ORDER

AND NOW, this 21st day of December, 1995, the order of the Court of Common Pleas of Beaver County in the above-captioned matter is affirmed.